IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| D. H. PACE COMPANY, INC., | |
| **Plaintiff/Counter-Defendant,** | **CIVIL ACTION FILE** |
| v. | **NO 1:12-CV-3854 -MHC** |
| AOD GROUP, LLC and GARRETT WALDROP, | |
| **Defendants/Counter-Plaintiffs.** | |

## ORDER

I.   PROCEDURAL HISTORY

On November 2, 2012, Plaintiff ("Pace") filed a Complaint [Doc. 1] against

Defendants ("AOD") asserting five claims that arise out of an alleged breach of an

October 12, 2011, settlement agreement in which AOD agreed not to use certain

terms in its advertisements and marketing materials.  Those claims were:  breach of

contract (Count I); breach of the implied covenant of good faith and fair dealing

(Count II); unfair competition under the federal Lanham Act (Count III); unfair

and deceptive trade practices under Georgia law (Count IV); and unfair

competition under Georgia law (Count V).  Pace amended its complaint on May

28, 2013 [Doc. 38] to add additional factual allegations to support Counts II-V.

On June 17, 2013, this Court granted AOD's Motion to Dismiss with respect to claims in Count I of the Amended Complaint based on AOD's alleged failure to disclose sales and profit information to Pace and AOD's alleged failure to disgorge profits, but denied the motion with respect to all other claims [Doc. 39]. On July 1, 2013, AOD filed an Answer to the Amended Complaint and the following counterclaims against Pace [Doc. 41]: declaratory relief that the use of certain terms did not constitute unfair competition under the Lanham Act (Count I); breach of contract (Count II); and breach of the implied covenant of good faith and fair dealing (Count III).[1]

On October 13, 2013, Pace filed a motion to file a second amended complaint [Doc. 68] seeking: to assert additional allegations in support of its breach of contract claim; to assert additional claims for false and misleading advertising under the federal Lanham Act and state law based on AOD's claims that its business was accredited by the Better Business Bureau ("BBB"), has been in operation for ten years, and is a "national" company (Count VI); and cancellation of the registration of AOD's trademark "National Overhead Doors" on the ground that the mark is merely descriptive (Count VII). By Order dated June 9, 2014, this Court denied the motion to amend only with respect to Pace's false

---

[1] AOD's fourth counterclaim was withdrawn in accordance with the Order of November 15, 2013 [Doc. 75].

advertising claim based on AOD's claim to be a "national" company and AOD's alleged breach of the settlement agreement by failing to disclose information or to disgorge profits and granted the motion with respect to all other additional claims [Doc. 84]. Pace's Second Amended Complaint was filed on June 16, 2014 [Doc. 85].

Before the Court is Pace's Motion for Partial Summary Judgment [Doc. 88] on three of its claims: (1) Count VI of the Second Amended Complaint, alleging claims for false and misleading advertising under Section 43 of the Lanham Act, 60 Stat. 441, as amended, 15 U.S.C. § 1125, and O.C.G.A. §10-1-421; (2) Count VII of the Second Amended Complaint, seeking cancellation of AOD's U. S. Trademark Registration No. 4,279,533 for "NATIONAL OVERHEAD DOORS" under 15 U.S.C. § 1119; and (3) the amount of AOD's profits during periods relevant to this litigation.[2]

---

[2]  In its Opposition to Pace's Motion for Summary Judgment filed August 18, 2014 [Doc. 94], AOD appears to be seeking summary judgment on Pace's false advertising claims [see Doc. 94 at 3]. AOD cannot "bootstrap" a motion for summary judgment onto a response in opposition to an opponents' motion. To the extent AOD has attempted to move for summary judgment on Pace's false advertising claims, that motion is **DENIED** as untimely and for failure to comply with Rule 56 of the Federal Rules of Civil Procedure and LR 56.1, NDGa.

II.    FACTUAL BACKGROUND

Unless otherwise indicated, the Court draws the following facts from Pace's "Statement of Undisputed Material Facts in Support of its Motion for Partial Summary Judgment" [Doc. 88-1] ("Pl. SMF") that are admitted by AOD in its response [Doc. 94-1] ("Def. SMF"). The Court has excluded assertions of fact by either party that are immaterial or presented as arguments or legal conclusions, and has excluded all assertions of fact unsupported by a citation to evidence in the record or asserted only in the party's brief and not the separately numbered statement of facts. See LR 56.1(B)(1), NDGa. The Court has also viewed all evidence and factual inferences in the light most favorable to Defendants, as required on a plaintiff's motion for summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Sunbeam TV Corp.v. Nielsen Media Research, Inc., 711 F.3d 1264, 1270 (11th Cir. 2013).

Overhead Door Corporation ("ODC") is a manufacturer of doors and related products. Pl. SMF at ¶ 1. ODC distributes its products nationwide, and its distributors typically operate under the trade name "Overhead Door Company of [Geographic Location]." Id. ¶¶ 3-4. ODC owns a federally registered Red Ribbon

4

trademark.[3]  Id. ¶ 2.  Pace is the exclusive greater metropolitan area distributor for

ODC, and it sells and repairs garage doors in the Atlanta area under the trade name

of "Overhead Door Company of Atlanta."  Id. ¶¶ 1, 5.  In addition to this trade

name, the distributorship agreement with ODC grants Pace the right to use the Red

Ribbon design.  Id. ¶ 5.  Pace employs approximately 239 individuals and operates

a fleet of 115 vehicles in the greater Atlanta metro area.  Id. ¶ 7.  It was

incorporated in 1973, but it has been in this business under the trade name

"Overhead Door Company of Atlanta" for over seventy-five years.  Id. ¶ 6; Def.

SMF ¶ 6.  Over its seventy-five year history, Pace advertised and promoted its

services and products under the "Overhead Door Company of Atlanta" trade name

using the Red Ribbon design.  Pl. SMF ¶ 11.  Pace has been accredited with the

Better Business Bureau ("BBB") since 1982, and has an "A+" rating from the

BBB.  Id. ¶16.

AOD directly competes with Pace.  Id. ¶ 17.  Defendant Garrett Waldrop

("Waldrop") owns AOD.  Second Am. Compl. [Doc. 85] ¶8; Def.'s Ans. to Second

Am. Compl. [Doc. 87] ¶ 8.  In April 2011, AOD filed a declaratory judgment

action in this Court, Civil Action No. 1:11-CV-01288-WSD, seeking a declaration

---

[3] U.S. Trademark Registration No. 1,807,028.  Pace owns only the design of the
Red Ribbon. See
http://tmsearch.uspto.gov/bin/showfield?f=doc&state=4805:tpklkh.2.1

that it was not infringing on Pace's trademark rights.  Pl. SMF ¶ 19.  Pace

counterclaimed, alleging unfair competition under federal and state law.  Id. ¶ 20.

To resolve the litigation, the parties entered into a settlement agreement

("Agreement") effective on October 12, 2011, under which AOD, among other

things, promised:  (1) not to use the word "Overhead" in a trademark or trade name

that also contained an "Atlanta name," including the "Gwinnett Cobb Overhead

Door Company" trade name;  and (2) not to use "Overhead Garage Door" or

"Overhead Garage Doors" as a trademark or trade name, or in a manner suggesting

to consumers that it is an indicator of source.  Id. ¶¶ 22-23.  The Agreement

defined the "Atlanta name" as the name of any city or county in the Metropolitan

Statistical Area of Atlanta.  Id. ¶ 24.

On December 21, 2011, counsel for AOD advised Pace's attorney that AOD

was considering adopting a new trade name – "National Overhead Door."  Id. at

25.  On December 22, 2011, Pace sent a letter notifying AOD that such a name

would cause confusion and infringe on Pace's rights.  Id. ¶ 26.  On December 28,

2011, Pace again communicated its objection by email.  Id. ¶ 27.  Nevertheless,

AOD adopted the trade name "National Overhead Doors"[4] in December 2011 and,

on June 11, 2012, filed a trademark application with the U.S. Patent and

---

[4] Pace uses "Door" and "Doors" interchangeably in its trade name.

Trademark Office, without notifying Pace. Id. at ¶¶ 28, 41. On January 22, 2013,

AOD obtained Registration No. 4,279,553 for the mark "NATIONAL

OVERHEAD DOORS." Id. ¶¶ 28-29. The services covered by the registration are

installation, maintenance, and repair of garage doors and garage door openers, but

the registration disclaims "Overhead Doors." Id. ¶¶ 30-31.

AOD has done some work in South Carolina and Florida under the trade

name "NATIONAL OVERHEAD DOORS," but does not offer its services in

Florida. Id. at ¶¶ 34-35. AOD stopped using the trade name "Gwinnett Cobb

Overhead Door Company" and adopted the trade name of "Gwinnett Cobb Garage

Door Company." Id. ¶ 36. AOD operates its business under both the "National

Overhead Door(s)" and "Gwinnett Cobb Garage Door Company" trade names. Id.

¶ 37. AOD owns, operates, and advertises on multiple websites, including

www.nationaloverheaddoors.com, www.nationaloverheaddoor.net,

www.garagedooratl.net, and www.aodatl.com. Id. ¶ 38. On

nationaloverheaddoors.com and nationaloverheaddoor.net, AOD claimed that

"National Overhead Door" had been in business for over ten years. Id. ¶¶ 39-40.

AOD's advertising and websites for both "National Overhead Door" and

"Gwinnett Cobb Garage Door Company" have featured the BBB's certification

mark. Id. ¶ 43. However, "National Overhead Door" has never been accredited by

7

the BBB, and accreditation for "Gwinnett Cobb Garage Door Company" was

revoked in September 2012. Id. ¶¶ 44-46. Nevertheless, AOD continued to use

the BBB certification mark for both companies on their websites and for the

advertisement purposes through 2014, despite BBB's demand to remove the mark.

Id. ¶¶ 47-49. To be accredited by the BBB, an organization must meet certain

accreditation standards. Id. ¶ 42. In relation to this lawsuit, AOD produced to

Pace, among other documents, its profit and loss statements and Waldrop's salary

and dividends derived from AOD. Id. ¶ 54.

III.   SUMMARY JUDGMENT LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment

is appropriate when "there is no genuine issue as to any material fact and the

movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), the Supreme Court held that

this burden could be met if the movant demonstrates that there is "an absence of

evidence to support the nonmoving party's case." As stated above, in making its

determination, the court must view the evidence and all factual inferences in the

light most favorable to the non-moving party. The court is bound to draw only

those inferences which are reasonable; "[w]here the record taken as a whole could

not lead a rational trier of fact to find for the nonmoving party, there is no genuine

8

issue for trial." Matsushita, 475 U.S. at 587 (internal quotation marks and citation omitted).

Once the moving party has adequately supported its motion, the burden shifts to the non-moving party to go beyond the pleadings and present specific evidence giving rise to a genuine triable issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986); Matsushita, 475 U.S. at 587. Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. Anderson, 477 U.S. at 252. Moreover, because the summary judgment standard mirrors that required for a judgment as a matter of law, summary judgment is not appropriate unless "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250.

IV.   DISCUSSION

A.   AOD'S Motion for Extension of Time to File Response

As an initial matter, the Court will first address AOD's motion for extension of time to file its response to Pace's motion for partial summary judgment [Doc. 95]. Despite obtaining two previous extensions of time to file a response to Pace's motion for partial summary judgment [Docs. 92-93], AOD failed to respond timely, in violation of the Court's August 7, 2014 Order, which clearly stated that

the response was due on August 15, 2014.  However, AOD responded three days

late and exceeded the page limit requirement set by LR 7.1D, NDGa.  [Doc. 94.]

Pace opposes AOD's motion.  [Doc. 97.]  Although the Court is skeptical about

AOD's counsel's explanation why the response was late,[5] and AOD failed to

explain why it exceeded the page limit, in the interest of justice, the Court

**GRANTS** AOD's request [Doc. 95] *nunc pro tunc*.  The Court cautions AOD's

counsel that it must comply with both time and page limits in the future.

>    B.    False Advertisement Claims (Count VI)

Pace claims that AOD made false representations about the length of time its

businesses have been operational and their BBB accreditations.  Specifically, Pace

first argues that AOD has advertised that "National Overhead Door" has been

locally owned for over ten years, despite adopting the "National Overhead Door"

trade name only in December 2011.  Pl.'s Mem. in Supp. of Mot. for Part. Sum. Jt.

("Pl.'s Br.") [Doc. 88-2] at 13.  Second, Pace contends that AOD made false

representations about "National Overhead Door's" and "Gwinnett Cobb Garage

Door Company's" BBB accreditation.  Id. at 8.  Pace asserts that "National

Overhead Door" has never been accredited by the BBB, and "Gwinnett Cobb

---

[5] Counsel claims that "Defendant had a good faith belief that pursuant to FRCP 6(d) that it had an additional three (3) days to file its Response . . . ."  [Doc. 95 at 1.]

Garage Door Company" lost its accreditation in 2012. Id. at 9. Nevertheless,

AOD continued to use the BBB certification mark in advertising for both

businesses through 2014. Id. According to Pace, both types of the representations

were literally false, thus, consumer deception should be presumed. Id. at 11. In

addition, Pace asserts that the misrepresentations were material because consumers

prefer to hire a business that has "been around for a long time over one that is

brand new" and trust the BBB-accredited businesses. Id. at 12-13. Further, Pace

contends that these false claims materially affected consumers' purchasing

decisions and were likely to induce consumers into thinking that AOD was in fact

Pace, a "long-standing BBB-accredited company." Id. at 13. Pace also claims

that, because AOD is a direct competitor, AOD's actions do harm or are likely to

harm Pace. Id. at 14.

AOD asserts that it began offering overhead and garage door services in the

Atlanta metro area in 2003 and, in support, relies on Waldrop's affidavit.[6] Def.'s

Opp. to Pl.'s Mot. for Part. Sum. Jt. ("Def.'s Opp.) [Doc. 94] at 4. It further argues

that the company's history does not get erased when it changes its name. Id. at 5.

---

[6] Pace contends that Waldrop's declaration should be dismissed as a sham
affidavit because he had previously testified that his first company, Angel
Overhead Door, was founded in 2004. [Pl.'s Reply Br. [Doc. 100] at 3 n.4.]

Thus, it contends that the statements are not literally false, nor are they misleading. Id. at 5-6.

Next, AOD argues that, even if the statements were misleading, Pace failed to produce reliable evidence necessary to sustain a claim for false advertising, such as consumer or market surveys. Id. at 6. AOD also claims that customers could not have been deceived that AOD is Pace, since there is a considerable difference between the parties' claims of how long they have been in the business, i.e., over ten years and over seventy-five years, respectively. Id. at 7. AOD also contends that Pace failed to allege that it lost customers because of AOD's advertisement and claims that, besides a self-serving affidavit, Pace failed to present evidence that AOD's advertisement about the length of time it had been in the business had a material effect on purchasing decisions. Id. at 8-9.

AOD admits that it engaged in misrepresentations concerning its BBB accreditation. Id. at 11. However, it claims that Pace's motion for summary judgment fails because this misrepresentation was immaterial to customers' purchasing decisions. Id. at 11-14. AOD contends that there are many BBB-accredited businesses in the Atlanta area offering garage door repairs and related services. Id. at 12-13. Thus, it argues that the BBB accreditation is not a material factor to a consumer's purchasing decision. Id. at 13-14. AOD also claims that

Pace failed to show that AOD's misrepresentations resulted in consumer confusion

or that Pace's lost sales because of AOD's misrepresentations.   Id. at 16-17.

> In relevant part, section 43(a) of the Lanham Act provides:
>
> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > . . .
>
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

> To succeed on a false advertising claim under § 43(a)(1)(B) of the Lanham Act, a plaintiff must establish that (1) the advertisements of the opposing party were false or misleading;  (2) the advertisements deceived, or had the capacity to deceive, consumers;  (3) the deception had a material effect on purchasing decisions;  (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been — or is likely to be — injured as a result of the false advertising.

Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citations omitted).[7]

To satisfy the first element of the false advertisement claim, the plaintiff must show that the defendant's statements were either: "(1) commercial claims that are literally false as a factual matter; or (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." Id. at 1261 (citation omitted). "When determining whether an advertisement is literally false or misleading, courts must analyze the message conveyed in full context, and must view the face of the statement in its entirety." Osmose, Inc. v. Viance, LLC, 612 F.3d 1298, 1308 (11th Cir. 2010) (internal quotation marks and citation omitted). The Eleventh Circuit has held that:

> The distinction between literally false and merely misleading statements is often a fine line. . . . Statements that have an unambiguous meaning, either facially or considered in context, may be classified as literally false. As the meaning of a statement becomes less clear, however, and it becomes susceptible to multiple meanings, the statement is more likely to be merely misleading.

---

[7] Claims under § 43(a) of the Lanham Act and the Georgia False Advertising Law, O.C.G.A. § 10–1–421, et seq., essentially involve the same test. See generally University of Ga. Athletic Ass'n v. Laite, 756 F.2d 1535, 1539 n.11 (11th Cir. 1985).

<u>Id.</u> at 1308-09 (internal quotation marks and citation omitted).  Thus, if the language "is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false."  <u>Id.</u> at 1309 (citation omitted).

Whether a plaintiff has to meet the second element of the false advertising test, i.e., consumer deception, depends on whether an advertisement was literally false or true but misleading.  <u>Id.</u> at 1318-19.  Specifically, "[i]f the court deems an advertisement to be literally false, then the movant is not required" to satisfy the second prong.  <u>Id.</u> at 1319.  However, in the absence of such literal falsity, plaintiff must "show that the advertisement conveys a misleading message to consumers, and that the relevant consumer population was actually deceived."  <u>Border Collie Rescue, Inc. v. Ryan</u>, 418 F. Supp. 2d 1330, 1347 (M.D. Fla. 2006) (citation omitted).  In implicit falsehood cases, the Eleventh Circuit requires the plaintiff to present evidence of deception in the form of consumer surveys, market research, expert testimony, or some other appropriate form.  <u>See</u> <u>Hickson</u>, 357 F.3d at 1261.

However, even if an advertisement is literally false, the plaintiff must still show that "the defendant's deception is likely to influence the purchasing decision."  <u>Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.</u>, 299 F.3d 1242, 1250 (11th Cir. 2002) (internal quotation marks and citation omitted).  This materiality requirement of a false advertisement claim can be satisfied by showing

that "the defendants misrepresented an inherent quality or characteristic of the product." Id. (citation omitted). The reasoning behind the materiality requirement is "that not all deceptions affect consumer decisions." Id.

Further, advertising that affects interstate commerce and solicitation of sales across state lines is "commerce" within the meaning of the Lanham Act.[8] Shatel Corp. v. Mao Ta Lumber & Yacht Corp., 697 F.2d 1352, 1356 (11th Cir. 1983). Finally, "[a]ctual injury is not a necessary element of a false advertising claim." Schutz Container Sys., Inc. v. Mauser Corp., No. 1:09-CV-3609-RWS, 2012 WL 1073153, at *35 (N.D. Ga. Mar. 28, 2012). Declining sales or loss of goodwill that are causally related to the false or misleading advertisement will suffice to satisfy the last prong of the false advertisement test. Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc., 915 F. Supp. 360, 364 (S.D. Fla. 1996), aff'd, 136 F.3d 139 (11th Cir. 1998) (unpublished).

Viewing AOD's representations in their "entirety," the Court concludes that the representations about the length of time "National Overhead Door" has been locally owned and operated under this trade name are facially false. Osmose, 612 F.3d at 1308. Even assuming arguendo that AOD has been offering garage door services for over ten years, consumers had no way of knowing that these

---

[8] The parties do not dispute that this element has been met.

representations were about AOD and not "National Overhead Door." Waldrop

Dep. [Doc. 89-1] at 169-70.  Further, advertisements about "National Overhead

Door's" and "Gwinnett Cobb Garage Door Company's" BBB accreditation are

also facially false. N. Am. Med. Corp. v. Axiom Worldwide, Inc., 522 F.3d 1211,

1225 (11th Cir. 2008) (defendant's claims about an affiliation with NASA were

literally false even though one engineer with NASA training or experience

participated in defendant's product development).

Because AOD's advertisement claims were literally false, Pace is not

required to show that consumers were deceived. Osmose, 612 F.3d at 1318-19.

However, Pace must still show that AOD's "deception [was] likely to influence the

purchasing decision." Johnson & Johnson Vision Care, Inc., 299 F.3d at 1250.

Both parties submitted competing evidence in support of their positions in the form

of statements from company representatives. Decl. of John Nale ("Nale Decl.")

[Doc. 90]; Decl. of Garrett Waldrop [Doc. 94-4] at 97-99. Pace's representative

swore that the BBB accreditation is important to consumers, and consumers care

whether a company is accredited and how long it has been in business. Nale Decl.

at 4-5. AOD's representative, on another hand, swore to the opposite. Waldrop

Decl. at 98. Construing the evidence in the light most favorable to AOD, the Court

concludes that Pace failed to carry its burden of proof that the BBB accreditation

17

or lack thereof and the company's length of time business are "*inherent*" qualities in the garage door services industry.  <u>Swatch S.A. v. New City, Inc.</u>, 454 F. Supp. 2d 1245, 1253 (S.D. Fla. 2006) (holding that "[w]hether a warranty is an inherent quality or characteristic of a Swatch watch is a question of material fact precluding an entry of summary judgment.").  In other words, Pace has failed to establish that there is no genuine issue of material fact as to whether the falsity of the BBB accreditation and length of time in business are material to customer's purchasing decisions.

In light of the failure of Pace to satisfy the first element of its false advertising claim in its motion, the Court need not address the remaining elements of Pace's Lanham Act false advertisement claims.  Accordingly, Pace's motion for partial summary judgment on the false advertisement claims contained in Count VI of its Second Amended Complaint is **DENIED**.

    C.    <u>Trademark Cancellation Claim (Count VII)</u>

Pace claims that the Court should cancel AOD's "National Overhead Doors" mark because it is either merely descriptive or deceptively misdescriptive.  Pl.'s Br. at 14-15.  Pace contends that by disclaiming "Overhead Door" in its registration, AOD admits that "overhead door" is merely descriptive of its goods and services.  <u>Id.</u> at 15.  It asserts that, if "national" in AOD's trade name indicates

that AOD conducts commerce across the state lines, the name then describes its business. Id. Accordingly, Pace contends that AOD's mark should have been registered only if AOD presented the evidence of secondary meaning to the Trademark Office. Id. at 16. Pace claims that AOD failed to provide such evidence, and the mark's registration must be canceled. Id. In the alternative, Pace argues that if AOD is not a national company, then the claimed trade name is deceptively misdescriptive, and this misrepresentation would materially affect a potential customer. Id. at 17. According to Pace, a consumer may reasonably believe that a national business is more established and reliable, or that it is associated with Pace or ODC. Id. In any event, Pace contends that this Court should cancel AOD's registration.

AOD responds that, once a mark is registered with the Patent and Trademark Office, it is presumptively valid. Def.'s Opp. at 17. AOD asserts that it claims the protection of the trademark of "National Overhead Doors" as a whole. Id. at 20. AOD contends that it did not admit the descriptiveness of the entire mark. Id. AOD also asserts that "national" is a noun, not an adjective in the context of its mark, and that the name is either suggestive or arbitrary. Id. at 21-22. AOD also disputes Pace's contention that its mark is deceptively misdescriptive, since AOD

does business in multiple states and plans expanding to additional states in the future. Id. at 23.

Pace replies that it rebutted the presumption of AOD's trade name's validity. Pl.'s Reply Br. at 8. It asserts that a combination of descriptive terms renders the entire mark descriptive, and such a name is entitled to protection only upon showing of a secondary meaning. Id. at 10. Pace also contends that AOD's intent to use the word "national" as a noun is not only irrelevant (because courts must look to the public's interpretation) but also "defies logic and the rules of syntax and grammar." Id.

In relevant part, 15 U.S.C. § 1119 provides:

In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Director, who shall make appropriate entry upon the records of the Patent and Trademark Office, and shall be controlled thereby.

"The net effect of [section 37 of the Lanham Act] is to give the courts concurrent power with the Patent and Trademark Office to conduct cancellation proceedings. Thus, a registration may be collaterally attacked in any civil action where validity of the mark is in issue." Menper Distribs., Inc. v. Germa Prods., Inc., No. 11-21792-CIV, 2011 WL 2983716, at *3 (S.D. Fla. July 22, 2011)

(citations and quotation marks omitted).  "In order to prosecute successfully a

petition for cancellation, petitioner must prove: (1) That it has standing to petition

for cancellation because it is likely to be damaged, and (2) that there are valid

grounds for discontinuing registration."  <u>Coach House Restaurant, Inc. v. Coach

and Six Restaurants, Inc.</u>, 934 F.2d 1551, 1557 (11th Cir.1991).

"[O]nly those marks that are capable of distinguishing the owner's goods

from those of others, i.e., that are sufficiently 'distinctive,' are eligible for federal

registration or protection as common law marks under the Lanham Act."  <u>Tana v.

Dantanna's</u>, 611 F.3d 767, 773 (11th Cir. 2010) (citations omitted).  The Eleventh

Circuit "recognizes four categories of distinctiveness, listed in ascending order of

strength" as follows:

> (1)   generic – marks that suggest the basic nature of the product or
> service; (2) descriptive – marks that identify the characteristic or
> quality of a product or service; (3) suggestive – marks that suggest
> characteristics of the product or service and require an effort of the
> imagination by the consumer in order to be understood as descriptive;
> and (4) arbitrary or fanciful – marks that bear no relationship to the
> product or service, and [are] the strongest category of trademarks.
> Suggestive and arbitrary or fanciful marks are deemed inherently
> distinctive because their intrinsic nature serves to identify a particular
> source of a product and are generally entitled to trademark protection.
> Generic marks, on the other hand, are generally incapable of receiving
> trademark protection and may never be registered as trademarks under
> the Lanham Act.  Descriptive marks, though not inherently distinctive,
> may become sufficiently distinctive to enjoy trademark protection by
> acquiring secondary meaning.  A name has acquired secondary

meaning when the primary significance of the term in the minds of the consuming public is not the product but the producer.

Id. at 774 (citations and quotation marks omitted).

"A high degree of proof is necessary to establish secondary meaning for a descriptive term which suggests the basic nature of the product or service." Am. Television & Commc'ns Corp. v. Am. Commc'ns & Television, Inc., 810 F.2d 1546, 1549 (11th Cir. 1987). The Court may cancel a mark that has been registered if it is merely descriptive and has no secondary meaning. See 15 U.S.C. § 1052(e)(1); see also Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co., 494 F.2d 3, 14 (5th Cir. 1974) (mark's cancellation is proper where the trade name was generic or merely descriptive and "had not been endowed by [plaintiff] with secondary meaning."). Such a mark should have not been registered in the first place. However, when "a mark has been registered for five years or less, the [registrant] is entitled to a rebuttable presumption that its mark is at least descriptive with secondary meaning." Ice Cold Auto Air of Clearwater, Inc. v. Cold Air & Accessories, Inc., 828 F. Supp. 925, 932 (M.D. Fla. 1993). Nevertheless, if the opposing party "provides evidence that the mark is generic or merely descriptive, the [registrant] must go beyond evidence of registration to establish the existence of a protectable interest." Id.

First, the Court concludes that Pace has standing.  It is likely to be injured by

the registration of AOD's "National Overhead Door" trademark, since Pace,

AOD's direct competitor, operates its business under a substantially similar trade

name of "Overhead Door Company of Atlanta."  In fact, AOD does not challenge

Pace's standing.  Second, the record reveals that there are valid grounds for

discontinuing AOD's trademark's registration.  Specifically, the evidence shows

that AOD's mark is merely descriptive, and AOD did not even attempt to argue

that the mark had acquired a secondary meaning.  AOD only contends that its mark

is either suggestive or arbitrary.  [Doc. 94 at 22.]

The Eleventh Circuit's opinion in <u>Knights Armament Co. v. Optical Sys.</u>

<u>Tech., Inc.</u>, 654 F.3d 1179 (11th Cir. 2011), supports the Court's conclusion that

AOD's trademark is merely descriptive.  There, one of the disputes between the

parties involved a question whether a trademark "Universal Night Sight," owned

by a manufacturer of night vision devices, was entitled to protection.  <u>Id.</u> at 1181.

The trademark was used in the manufacturing and marketing of the clip-on night

vision devices for use on military rifles; these devices "enable[ed] snipers to see

targets in low light conditions."  <u>Id.</u> at 1181 n.1.  The district court determined that

the phrase "night sight" was "a generic term used in the sniper community to refer

to the genus of goods that enable a sniper to observe or acquire a target at night,"

and the term "universal" was merely descriptive. Id. at 1189. Because the mark

had not attained secondary meaning, it was not entitled to protection.

Similarly, under the circumstances in this case, AOD has already disclaimed

the phrase "Overhead Door" but, even if it had not, this phrase is at most

descriptive of AOD's goods and services. In fact, based upon the analysis in

Knights Armament Co., "Overhead Door" may very well be a generic term in the

garage door industry. Nevertheless, the Court does not have to resolve this issue

because as a whole "National Overhead Door" is merely a descriptive mark. When

looking "to the natural interpretation the public would give to" this phrase, the

Court concludes that the word "National" (like the term "Universal") is commonly

used in business as an adjective to describe a company that operates in multiple

markets. Leathersmith of London, Ltd. v. Alleyn, 695 F.2d 27, 30 n.4 (1st Cir.

1982) (holding that "courts must look, not to the owner's subjective intent, but to

the natural interpretation the public would give to the word."); see also Knights

Armament Co. v. Optical Sys. Tech, Inc., 647 F. Supp. 2d 1321, 1330 (M.D. Fla.

2009) (concluding that the term "universal" was "commonly used in business

terminology as an adjective to describe a product or system that applie[d]

everywhere."). Thus, AOD's argument that it intended to use "National" as a noun

is irrelevant. The Court concludes that "National" is merely a descriptive term, as

is the mark "National Overhead Door." In light of this, and because AOD never claimed that its mark had acquired secondary meaning, it should have not been registered in the first place. Accordingly, the Court **GRANTS** Plaintiff's motion for partial summary judgment on Count VII of its Second Amended Complaint and **ORDERS** the cancellation of the U.S. Registration No. 4,279,553.

D.      Damages (Defendants' Profits)

Finally, Pace asserts that it is entitled to AOD's profits as a remedy for any claims for which AOD ultimately is found liable. Pl.'s Br. at 18. Pace contends that AOD failed to provide its updated financial information. Id. at 19. Thus, it claims that the award should be calculated based on the records that AOD did provide.

AOD responds that only upon showing that it benefited from the false advertisement could Pace recover AOD's profits. Def.'s Opp. at 25. AOD claims that Pace failed to provide such evidence. Id. AOD further asserts that Pace's calculation of AOD's and Waldrop's profits is incorrect, and attaches Carolyn Maddox's declaration in support. Id. at 27.

Pace replies that AOD failed to supplement its financial records and, thus, Pace's expert was not able to provide an updated report. Pl.'s Reply Br. at 18. In addition, Pace claims that AOD never disclosed Maddox as a potential witness. Id.

at 13.  Accordingly, Pace contends that Maddox's declaration, the new profit and

loss statements and tax returns should be excluded under Rule 37(c)(1) of the

Federal Rules of Civil Procedure.  Id. at 13.

   "The Eleventh Circuit has not spoken on the specific issue of the method for

proving profits for false advertising claims."  Ameritox, Ltd. v. Millennium Labs.,

Inc., No. 8:11-CV-775-T-24-TBM, 2014 WL 1456347, at *9 (M.D. Fla. Apr. 14,

2014).  Some circuit courts have held that "where a plaintiff who has brought a

Lanham Act claim for false advertising has failed to present evidence that the

defendant benefitted from the alleged false advertising, the plaintiff will not be

permitted to recover any of the defendant's profits under 15 U.S.C. § 1117(a)."

Logan v. Burgers Ozark Country Cured Hams Inc., 263 F.3d 447, 465 (5th Cir.

2001); see also Balance Dynamics Corp. v. Schmitt Industries, 204 F.3d 683, 695

(6th Cir.2000) (noting that the plaintiff was only entitled to a disgorgement of

profits "if it could show that defendant gained additional sales due to the

advertisement, or that plaintiff lost sales, or was forced to see [sic] its product at a

lower price.").  However, the Eleventh Circuit's decisions in trademark

infringement cases have consistently concluded that a plaintiff has to prove only

the infringer's sales, and "[t]he burden then shifts to the defendant, which must

prove its expenses and other deductions from gross sales." <u>Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.</u>, 833 F.2d 1484, 1487-88 (11th Cir. 1987).

As an initial matter, the record reveals that AOD failed to supplement documentation relating to its financials as required by Federal Rule of Civil Procedure 26(e)(1). AOD also failed to disclose Maddox as a witness as Rule 26(a)(2) instructs. Accordingly, Maddox's declaration and new profit and loss statements and tax returns are excluded under Federal Rule of Civil Procedure 37(c)(1), which states that "[if] a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." AOD has provided no justification for its failure. Further, it did not provide rebuttal to Clay Busker's (Pace's expert) report [Doc. 89-24] concerning AOD's and Defendant Waldrop's profits and projected profits and chose not to depose Busker. Finally, Pace would be prejudiced if the Court were to allow AOD to rely on the evidence that Pace has not seen before and where it had no chance to cross-examine Maddox.

The Court only decides the amount of AOD's profits in this Order, and not AOD's liability, which can only be established at trial. The Court concludes that, in accordance to Busker's expert report, AOD's profits were $245,565 from

27

January through October 2013 and $11,162 per month thereafter, and Defendant Waldrop's profits were $39,681 from January through August 2013, and $1,984 per month thereafter.  Accordingly, Pace's motion for partial summary judgment is **GRANTED** on the calculation of Defendants' profits.

V.    CONCLUSION

For the reasons stated above, the Court **GRANTS NUNC PRO TUNC** Defendants' motion for extension of time to file a response to Pace's motion for partial summary judgment [Doc. 95].  The Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Partial Summary Judgment [Doc. 88] as follows:  the Court **GRANTS** Plaintiff's motion on Plaintiff's claim for cancellation of the U.S. Registration No. 4,279,553 contained in Count VII of the Second Amended Complaint, **GRANTS** Plaintiff's Motion for Partial Summary Judgment with respect to the calculation of Defendants' profits, and **DENIES** Plaintiff's motion for partial summary judgment on the false advertisement claims contained in Count VI of the Second Amended Complaint.

**IT IS SO ORDERED** this 2nd day of March, 2015.


MARK H. COHEN
United States District Judge


28